In the United States District Court
for the Southern District of Ohio
Western Division

_____

| | |
|---|---|
| Kyle Arledge, | |
| *On behalf of himself and those similarly situated*, | Case No. 3:16-cv-386-WHR |
| Plaintiff, | Judge Walter H. Rice |
| v. | |
| Domino's Pizza, Inc., et al., | |
| Defendants. | |

_____

Plaintiff's Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses
_____

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement, attached as Exhibit 1, and, at the conclusion of the settlement process, dismiss the case with prejudice. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*abiller@msdlegal.com*
*akimble@msdlegal.com*
www.msdlegal.com

1

*Counsel for Plaintiff*

---

Memorandum in Support of Plaintiff's Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses

---

1. **Introduction**

On January 31, 2018, the Court preliminarily approved the parties' Settlement Agreement, attached as Exhibit 1. *See* Order, Doc. 36. Plaintiff now asks the Court to grant final settlement approval and, upon Defendants' final payment of the settlement funds, terminate this action.

2. **Background of the Lawsuit**

Plaintiff Kyle Arledge delivered pizzas for a Domino's brand restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the FLSA and Ohio law. In Plaintiff's Complaint, he alleged several wage and hour violations. The violations fall into three broad categories, discussed in more detail below.

The primary claim in this lawsuit is that Defendants[1] paid the delivery drivers at or below minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. There is little dispute that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 778.217.

In this case, the drivers were reimbursed at an average rate of approximately $.30 per mile. Defendants contend that this rate fully compensates drivers for their expenses. Plaintiff alleges that

---

[1] While Plaintiff uses the term "Defendants" throughout, the Domino's corporate defendants dispute that they employed Plaintiff or the other drivers and, instead, contend that only the franchisee defendants are "employers" in this action. So, while all of the defendants dispute liability, the Domino's defendants also dispute that they are employers at all.

3

the true vehicle cost is higher than $.30. He points to the IRS mileage reimbursement rate as a baseline, which is approximately $.56 per mile. *See* Complaint, Doc. 1, ¶122.

During settlement discussions, Plaintiff asserted a claim under the FLSA's tip credit notice requirements. *See* 29 U.S.C. 203(m). That claim is also resolved under the proposed settlement agreement.

Secondarily, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. *Id.* at ¶¶289–293. Plaintiff's Prompt Pay Act claim is contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the Ohio liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

### 3. Summary of Settlement Terms

The settlement agreement creates a class settlement fund of up to $850,000. *See* Exhibit 1. Class members that file a Claim Form and Release will receive up to $.30 per mile that they drove for work, depending on the claims rate. The above numbers are based on the following:

- First, the parties agreed to use a compromise reimbursement rate of $.45 as the baseline measure of possible damages. In other words, damages would be based on the difference between the $.45 compromise number and the $.30 Defendants actually reimbursed. Defendants' agreement to such compromise rate is not to be construed as an admission by them that such rate is legally mandated. The compromise rate has been agreed to solely as a means of resolving the dispute without the expenditure of further defense costs, and in light of the fact that the class fund is capped at $850,000.

- Second, the parties used that difference ($.15) to calculate a total alleged under-reimbursement across the class of workers. This amount is approximately $1,646,000.

- Third, the parties agreed that workers who make claims will be entitled to $.30/mile driven. This represents twice the alleged under-reimbursement to account for

4

    additional damages. (The FLSA allows workers to recover twice their unpaid wages and Ohio law allows workers to recover three times their unpaid wages.). Again, this calculation is not to be construed as an admission that liquidated damages are warranted on the facts here, but solely as a means of resolving the dispute without the expenditure of further defense costs, and in light of the fact that the class fund is capped at $850,000.

- Fourth, the parties agreed to cap the potential payout at $850,000.[2] If the class members claim more than this amount, then each class member will receive a pro rated portion based on their own alleged under-reimbursement.

The Settlement Agreement's terms also include:

- Plaintiff's counsel will seek, and Defendants will not oppose, an award of attorneys' fees of $250,000 (approximately 29% of the gross settlement value allocated to the class members). This amount will be paid *in addition* to the settlement amount above and, thus, does not reduce the amounts going to class members. Plaintiff's counsel will also seek a reimbursement of reasonable expenses, which will be paid in addition to the settlement amount above.

- Plaintiff will seek, and Defendants will not oppose, a service award for Plaintiff of $10,000.00.

- Settlement funds not paid out of the Settlement amount will remain the property of Defendants.

4. **Background of the Class and the Results of the Settlement**

Now that the claims period has ended, the parties are in a position to describe how the above settlement will play out.

First, the class's participation in the settlement is described below:

|  | **Numbers** | **Percent of Total Class** |
|---|---|---|
| **Total Class Members** | 1,706 | 100% |
| **Opt-ins** | 407 | 23.9% |
| **Non-responding** | 1,299 | 76.1% |
| **Opt-outs** | 0 | 0% |

As the above chart demonstrates, the participation in this settlement has been quite good.

---

[2] As the attached Class Settlement Agreement reflects, the payments are being made by the franchisee defendants, in light of Domino's position that it is not the joint employer of the Plaintiff and other delivery drivers.

Next, as a result of those numbers, the Court can examine the amount of money that the class members will claim in the aggregate and the amount class members will receive in relation to their total damages. At present, Defendants have presented numbers and the underlying data based on using the average miles driven per hour on the road across all stores, coupled with the hours on the road for each person to calculate an amount of money due per person under the Settlement Agreement.[3] This system is entirely equitable and reasonable and, if used, would result in the class members claiming 100% of the total fund; *i.e.*, all money will go to the class members and none will revert to the defendants. Because more money is claimed than allocated, class members will each end up receiving approximately 1.31 × their unpaid wages, using a $.45 reimbursement rate.

That said, at Plaintiff's request, Defendants are now performing calculations to determine settlement payments based on an average miles per hour on the road on a store-by-store basis. While the above system is entirely appropriate, this alternate calculation will likely result in a more precise measure of damages going to the class members. Plaintiff will provide an update to the Court in light of these additional calculations as soon as they can.

**5. The Settlement Procedure**

In this case, following the Court's preliminary approval of the Settlement Agreement, Plaintiff sent the Court-approved notice (Doc. 35-2) to the class members. Plaintiff received no objections to the settlement. The notice was sent by both email and regular mail, giving class members an option to make a claim either online or in writing.

**6. The Standard for Settlement Approval**

---

[3] The parties had originally anticipated calculating each class member's claim based on the exact miles that the class member drove. This has proved impracticable.

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 7. The settlement provides a fair resolution of disputed claims.

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. In this case, Plaintiff's success on the under-reimbursement claim was not certain. Both parties could present arguments that the proper reimbursement rate was higher or lower than the compromise rate used in the settlement. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS reimbursement rate applies), but some could require expert testimony to a jury. As it is, the settlement gave employees the potential to recover 200% of what Plaintiff's

counsel believes to be a reasonable compromise rate. Based on the actual claims, class members will receive 131% of damages using the compromise rate.

With respect to Plaintiff's Tip Credit Notice claim, the Franchisee Defendants were able to present evidence that notice was, in fact, provided. Although Plaintiff believes the notice may have not met the FLSA's specific requirements, it would have been challenging to succeed on the claim.

With respect to Plaintiff's Prompt Pay Act, success was even less certain. This claim is contingent on the under-reimbursement claim and mostly covers the same measure of damages. The difference is that the Prompt Pay Act claim also allows for the recovery of liquidated damages, but only if Plaintiff can show there was no dispute regarding the unpaid wages. O.R.C. 4113.15(B). And, as stated above, there was a bona fide dispute regarding both the existence of and amount of the unpaid wages, making Plaintiff's claim unlikely to succeed with respect to any damages beyond the unpaid wages already covered by the under-reimbursement claim.

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (7) the public interest. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. Each factor is addressed below.

***Complexity, expense, and likely duration.*** This case involves the complexity of a hybrid class/collective action under federal and state wage and hour laws. "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex

type." *Id.* As discussed, above, this case could have required expert testimony on what a reasonable reimbursement rate is. It also involves approximately 20 locations, which would require substantial discovery. In light of the case's size and complexity, the case was likely to involve a lengthy litigation process along with the probability that either side may appeal an adverse decision.

This factor supports approving the proposed settlement.

*The stage of the proceedings and amount of discovery completed.* Here, the parties stayed the proceedings close to the start of the case. Although this makes the case appear to be undeveloped, during the stay, the parties exchanged the information necessary to evaluate and negotiate the settlement agreement. Specifically, Plaintiff was provided with a four week sample of all relevant data (payroll, delivery, reimbursement, etc.) from all 20 locations. Like many wage and hour lawsuits, this one largely rests on Defendants' records.

These records allowed Plaintiff to properly calculate, evaluate, and negotiate a settlement. Moreover, the settlement agreement allowed Plaintiff to review additional records in order to confirm what was on the first set of records. *See* Exhibit 1, §2(D). Plaintiff's counsel has done so. Thus, Plaintiff has everything he needs to assess the strengths and weaknesses of his claims and accurately calculate potential damages.

*The judgment of experienced trial counsel.* Plaintiff's counsel believes that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable. Accordingly, Plaintiff's counsel supports approval of this settlement.

*The nature of the negotiations.* The parties reached the above settlement after numerous discussions, exchanges of information, an all-day mediation, and additional negotiations. The parties negotiated at arm's length, through a multi-step process.

9

First, Plaintiff's counsel selected a four-week sampling from each of the Domino's brand locations at issue. Plaintiff's counsel was then provided with all of the relevant driver, payroll, and delivery data from those weeks. From there, Plaintiff was able to calculate and extrapolate class-wide damages for the claims above.

Next, the parties exchanged initial settlement proposals. Following that exchange, the parties engaged an independent mediator, John R. Phillips, and attended an all-day mediation session. At the mediation, Defendants' counsel provided Plaintiff with additional information and documents. The session did not result in a settlement, indicating that the negotiations were arms-length and contentious.

The parties continued to negotiate from September 12, 2017 to until mid-December. The negotiations included numerous letters and phone conversations to try to resolve the case.

Through the parties' efforts, the parties were able to reach the resolution now presented to the Court. This non-collusive, arms-length process allowed Plaintiff to properly represent the class's interests and achieve a fair settlement agreement.

***Any objections from class members.*** There have been no objections from class members. Moreover, the strong opt-in rate supports that the class members have reacted positively to the settlement.

***The public interest.*** The public interest generally favors settling class action litigation. This case is no different.

8. **The payment of attorneys' fees is reasonable.**

Under either the parties' settlement agreement (Exhibit 1, §4) or Fed. R. Civ. P. 23(h), Plaintiff is entitled to an attorney's fee award. Here, Plaintiff requests 22.7% of the common fund

of $1,100,000. Thus, Plaintiff asks for an award of $250,000, as agreed to in the Settlement Agreement. In addition, Plaintiff asks the Court to award $8,476.53 in expenses.

### 8.1. The Court should use the "percentage of the fund" approach to calculate a reasonable fee.

In the Sixth Circuit, district courts may use either the percentage of the fund or lodestar method to calculate fee awards. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018). Courts in the Southern District of Ohio generally use the percentage of the fund method. *Id.*

There are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (providing a good discussion on the subject). The percentage approach encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. *Id.* In contrast, the lodestar method burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id.*

In this case, the settlement agreement requires Defendants to pay the fee award *in addition* to the money going to class members. Exhibit 1, §4(A). Thus, Plaintiff is not requesting an award that would take money from the class's "fund." *Id.* Still, in situations where fees are paid in addition to the class's money, "the common fund analysis properly applies." *Merkner v. AK Steel Corp.*, No. 1:09-cv-423-TSB, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011).

### 8.2. The fund is $1,100,000.

In order to determine the amount of the "fund" for purposes of gauging a fee award, "courts include all amounts benefiting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos*, 2018 WL 2009681 at *8.

As a result of this case, class members will receive $850,000, plus attorney's fees and expenses. Plaintiff requests an award of 29% of the amount that will go to class members, or $250,000.

That said, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681 at *8, *quoting Gascho v. Glob Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). Under *Gascho*, the correct measure is:

$$\$250,000 \,/\, \$1,100,000^4 = 22.7\% \text{ fee award}$$

Whether calculated as 22.7% or 29%, the proposed fee award is well within the range courts in this district have found to be reasonable. *See Rikos*, 2018 WL 2009681 at *9. Awards between 20% and 50% are reasonable. *Id.* Although the proposed award is less than the 30%+ district courts routinely award,[5] Class Counsel agreed to limit their fee petition because Franchisee Defendants

---

[4] $850,000 going to the class + $250,000 in fees (expenses could be included here as well, but for ease of calculations, they have not been included.

[5] *See, e.g.*, *In re Foundry Resins Antitrust Litig.,* No. 04-MDL-1638 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

have agreed to pay any awarded fees separately and *in addition* to the settlement amount allocated to class members. This means that class members will see no reduction in their own claim amounts as a result of any fee award.

### 8.3. The *Ramey* factors support Plaintiff's requested fee award.

When reviewing a fee award's reasonableness, courts also consider six factors:

(1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides.

*See Rikos*, 2018 WL 2009681 at *9, *citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each factor, addressed below, support Plaintiff's fee request.

***The value of the benefits rendered to the class.*** Plaintiff has achieved an excellent result in this lawsuit. All class members who joined the lawsuit will receive approximately 131% of their unpaid wages using a $.45 reimbursement rate. Those who did not join the case have not released any of their claims.

***Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others.*** Wage and hour cases, like this one, often involve a large number of workers with relatively small individual claims. Though the claims are individually small, the unpaid wages make a significant difference in the lives of low-wage workers, like the pizza delivery drivers at issue here. Society has an interest in rewarding attorneys who take on these cases and receive real benefits to exactly the types of workers the FLSA is designed to protect.

***Whether the services were undertaken on a contingent fee basis.*** Plaintiff's counsel took on this case on a contingent fee basis. *See* Exhibit 2, Kimble Declaration, ¶ 6.

13

*The value of the services on an hourly basis (the lodestar cross-check).* Courts in this district may also perform a "lodestar cross-check" to ensure the overall fee is reasonable. *Rikos*, 2018 WL 2009681, at *10. A lodestar cross-check, however, is unnecessary. *Id.*

Plaintiff's counsel has provided a summary of their time, billing rates, and tasks completed. Kimble Declaration, ¶¶ 3-5. If the Court deems a more thorough review to be necessary, Plaintiff will provide his counsel's time records. In any case, the total lodestar in this case is $97,165. Thus, the proposed award is 2.57 times the lodestar. This is in line with other cases. *See, e.g., Swigart*, 2014 WL 3447947, at *6 (finding a 2.57 multiplier was appropriate in an FLSA class/collective action); *see also Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (holding that a 2.5 multiplier is "typical of lodestar multipliers in similar cases").

*The complexity of the litigation.* Generally speaking, "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.* This case is no exception. The complexity of the case weighs in favor of the fee award.

*The professional skill and standing of counsel on both sides.* Plaintiff's counsel is well-versed in wage and hour law. Indeed, wage and hour litigation is essentially Plaintiff's counsel's exclusive practice area. Kimble Declaration, ¶¶ 11-22. Another court in this district held, referring to Mr. Biller and his firm, "the attorneys were highly skilled. Plaintiffs' counsel have prosecuted

many wage-and-hour claims." *Castillo vo. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015).

Likewise, Defendants' counsel are well-versed in wage and hour litigation. *See* https://www.fisherphillips.com/attorneys-jrice; https://www.fisherphillips.com/attorneys-mparker.

### 8.4. Plaintiff is also entitled to an award $8,476.53 for his expenses.

Defendants have agreed to pay Plaintiff's expenses incurred in this lawsuit. Exhibit 1, §4(B). Plaintiff's counsel has provided an itemized list of expenses, which total $8,476.53. Kimble Declaration, ¶ 8. As a quick reference, the vast majority of the expenses came from the following sources:

- Filing fee: $400
- Mediation costs: $2,899.24
- Sending Notice to Class Members: $4,582.05

*Id.*

### 9. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D. at 374 (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000. Plaintiff spent time and effort working with his counsel on this case, including attending an all-day mediation. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Moreover, in this case, Plaintiff has agreed to a separate, global release of claims that further underpins any additional payment to Plaintiff.

A $10,000 award is reasonable in this case where Plaintiff recovered substantial monetary benefits for a class of low-wage workers. This award is in the range of other such awards. *See, e.g., Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (describing two $10,000 awards as "modest" and citing awards ranging from $4,000 to $12,000).

**10. The Court should certify a hybrid class and collective action for settlement purposes.**

As detailed in Plaintiff's Motion for Preliminary Settlement Approval (Doc. 35), class and collective action certification is appropriate. Those arguments remain and Plaintiff incorporates them herein.

**11. Conclusion**

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement and, upon Defendants' payment of the settlement funds, dismiss the lawsuit with prejudice.

Plaintiff also asks the Court to award $250,000 in attorneys' fees, $8,476.53 in expenses, and approve a $10,000 incentive award to Plaintiff.

Following the Fairness Hearing, if it would assist the Court, Plaintiff can draft a decision and order reflecting the Hearing's outcome.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
MARKOVITS, STOCK & DEMARCO LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*abiller@msdlegal.com*
*akimble@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiff*

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Andrew Kimble*

Andrew Kimble